**United States District Court**
**District of Massachusetts**

| | |
|---|---|
| ───────────────────────── )<br>MAC S. HUDSON, FARADAN IBN )<br>SALAHUDDIN, EDGAR ROCK, RAYMOND )<br>COLON, ABDUL J. LOPEZ, RALPH )<br>BROWN, EVANS MAHON and UMAR )<br>SALAHUDDIN, )<br> )<br>      Plaintiffs, )<br> )<br>      v. )<br> )<br>LUIS S. SPENCER, CHRISTOPHER )<br>MITCHELL, BRUCE GELB, KAREN )<br>DINARDO, CHRISTINE LARKINS, LOIS )<br>RUSSO, JAILEEN HOPKINS and DALE )<br>BISSONNETTE, )<br> )<br>      Defendants. )<br>───────────────────────── ) | Civil Action No.<br>11-12173-NMG |

**MEMORANDUM & ORDER**

GORTON, J.

This is a pro se prisoner case in which inmates at MCI-Concord claim that they have been denied the right to observe tenets of the Nation of Islam ("NOI") while incarcerated. Defendants are all employees of MCI-Concord or the Massachusetts Department of Correction ("the DOC").

Pending before the Court are defendants' motion for summary judgment and plaintiffs' cross-motion for summary judgment. For the reasons that follow, both motions will be allowed, in part, and denied, in part.

-1-

I.    **Background**

Plaintiffs allege that defendants have violated
1) plaintiffs' First and Fourteenth Amendment rights, including
the right to equal protection, under 42 U.S.C. § 1983, 2) the
Religious Land Use and Institutionalized Persons Act ("RLUIPA")
under 42 U.S.C. § 2000cc, et seq., 3) the Prison Litigation
Reform Act ("PLRA") under 42 U.S.C. § 1997e, 4) Massachusetts
General Laws, Chapter 127, section 88, 5) Articles I and XII of
the Massachusetts Declaration of Rights and 6) Title 103 of the
Code of Massachusetts Regulations, section 471.

They request 1) the appointment of a full-time NOI
chaplain, 2) daily access to space for worship, 3) separate NOI
fasting and feast sessions during religious ceremonies, 4) an
ability to wear religious attire such as bow ties and lapel
pins, 4) an ability to engage in "spiritual drilling" and
6) compensatory and punitive damages.

Plaintiffs initiated this lawsuit in December, 2011 and
filed an amended complaint in March, 2014.  Defendants filed a
motion for summary judgment in July, 2015 and plaintiffs filed a
cross-motion for summary judgment the following month.

II.  **Motions for summary judgment**

A.    **Legal standard**

The role of summary judgment is "to pierce the pleadings
and to assess the proof in order to see whether there is a

genuine need for trial." Mesnick v. Gen. Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991) (quoting Garside v. Osco Drug, Inc., 895 F.2d 46, 50 (1st Cir. 1990)).  The burden is on the moving party to show, through the pleadings, discovery and affidavits, "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

A fact is material if it "might affect the outcome of the suit under the governing law . . . ." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A genuine issue of material fact exists where the evidence with respect to the material fact in dispute "is such that a reasonable jury could return a verdict for the nonmoving party." Id.

If the moving party satisfies its burden, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine, triable issue. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).  The Court must view the entire record in the light most favorable to the non-moving party and make all reasonable inferences in that party's favor. O'Connor v. Steeves, 994 F.2d 905, 907 (1st Cir. 1993).  Summary judgment is appropriate if, after viewing the record in the non-moving party's favor, the Court determines that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law.

-3-

**B. Overview of the parties' arguments**

The parties assert that they are each entitled to summary judgment.  Defendants argue that: 1) sovereign immunity bars § 1983 claims against them in their official capacities, 2) plaintiffs have not alleged sufficient facts in their § 1983 claims against defendants in their personal capacities, 3) qualified immunity bars § 1983 claims for monetary damages, 4) plaintiffs cannot establish a RLUIPA claim on any asserted ground, 5) plaintiffs cannot establish a First Amendment claim, 6) plaintiffs do not allege sufficient facts in their equal protection claim, 7) the PLRA bars recovery for damages where there are no physical injuries, 8) agency regulations do not provide a private cause of action, 9) plaintiffs have "unclean hands" and 10) the state law claims are moot with respect to plaintiffs Mahon and Lopez.

Plaintiffs contend that: 1) they have established that defendants' conduct violates RLUIPA, the First Amendment and the Massachusetts Declaration of Rights, 2) agency regulations do not prohibit inmates from leading prayer services, 3) their assertions of unequal treatment establish an equal protection claim, 4) they do not have unclean hands and 5) qualified immunity does not bar their RLUIPA or § 1983 claims.

**C. Mootness**

Mootness is a constitutional issue that a court should ordinarily resolve before reaching the merits. Am. Civil Liberties Union of Mass. v. U.S. Conference of Catholic Bishops, 705 F.3d 44, 52 (1st Cir. 2013). The mootness doctrine requires that "an actual controversy must be extant at all stages of the review, not merely at the time the complaint is filed." Id. The First Circuit Court of Appeals has identified the following instances of cases becoming moot:

1) when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome;
2) when the court cannot give any effectual relief to the potentially prevailing party; and
3) if events have transpired to render a court opinion merely advisory.

KG Urban Enters., LLC v. Patrick, 969 F. Supp. 2d 52, 56 (D. Mass. 2013) (citing Catholic Bishops, 705 F.3d at 52-53).

Defendants contend that the claims raised by plaintiffs Lopez and Mahon are moot because the plaintiffs are no longer incarcerated at MCI-Concord. Plaintiffs have presented no arguments or evidence to the contrary. The Court agrees with defendants that plaintiffs Lopez and Mahon no longer have legally cognizable interests and that their claims are now moot. Accordingly, the Court will dismiss the claims to the extent that they are raised by plaintiffs Lopez and Mahon.

### D. Federal claims and defenses

### 1. Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc-1

RLUIPA "protects institutionalized persons who are unable freely to attend to their religious needs." Cutter v. Wilkinson, 544 U.S. 709, 721 (2005).  The statute provides more protection than the First Amendment does for an inmate's free exercise rights. Kuperman v. Wrenn, 645 F.3d 69, 79 (1st Cir. 2011). Section 3 of RLUIPA provides:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person-- (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1.  Courts applying the RLUIPA standard should give

> due deference to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with consideration of costs and limited resources.

Cutter, 544 U.S. at 723.

### a. Immunity

Defendants contend that state immunity bars plaintiffs from recovering monetary damages under RLUIPA.  Plaintiffs argue that Congress intended to abrogate state immunity in RLUIPA cases by

1) enacting the statute under its Spending Clause powers and conditioning state receipt of federal funds on abrogation and 2) expressly defining the term "government" in § 2000cc-5 to include the state and state officials, indicating that RLUIPA allows for recovery against the state and its officials.

The Court finds that state immunity limits plaintiffs to injunctive relief only under RLUIPA.  First, state immunity bars RLUIPA claims against the state for monetary damages because the statute does not reflect the unequivocal intent of Congress to require states to waive their immunity to suits for damages. Sossamon v. Texas, 131 S. Ct. 1651, 1660 (2011).  As a result, plaintiffs cannot bring claims against state officials in their official capacities for monetary damages because those suits are treated as suits against the state. Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989).  Second, although the First Circuit Court of Appeals has declined to rule on whether plaintiffs can bring RLUIPA claims against state officials in their personal capacities for damages, another session in this court has held that they cannot. Cryer v. Spencer, 934 F. Supp. 2d 323, 333-34 (D. Mass. 2013).

Accordingly, the Court will allow defendants' motion for summary judgment and deny plaintiffs' cross-motion for summary judgment on the RLUIPA claim to the extent that plaintiffs seek monetary damages against defendants in their official or

personal capacities.  The remaining questions, discussed below,
concern whether summary judgment is warranted to the extent that
plaintiffs seek injunctive relief on their RLUIPA claim.

### b.   Legal standard

The First Circuit Court of Appeals ("the First Circuit")
evaluates RLUIPA claims under a burden-shifting standard with
four elements. Spratt v. Rhode Island Dep't of Corr., 482 F.3d
33, 38 (1st Cir. 2007).

The plaintiff first must show that there is a burden on the
institutionalized person's religious exercise and the burden is
substantial. Id.  A substantial burden exists when the
government puts "substantial pressure on an adherent to modify
his behavior and to violate his beliefs . . . ." Hudson v.
Dennehy, 538 F. Supp. 2d 400, 409 (D. Mass. 2008), aff'd sub
nom. Crawford v. Clarke, 578 F.3d 39 (1st Cir. 2009).  It is not
enough that the incidental effects of a government program make
it more difficult for an individual to practice his religion.
Id. at 409-10. Instead, the effects must have a tendency to
coerce him into acting contrary to his religious beliefs. Id.

If the plaintiff establishes such a "substantial burden,"
the requirement of proof then shifts to the government to
demonstrate that the burden furthers a compelling government
interest and the burden is the least restrictive means of
achieving the interest. Spratt, 482 F.3d at 38.  A compelling

-8-

interest is "more than a colorable interest, or an interest serving the convenience of the State." Hudson, 538 F. Supp. 2d at 410.  Courts should evaluate claims

> with particular sensitivity when security concerns are legitimately at issue . . . [because] prison security is a compelling state interest, and [] deference is due to institutional officials' expertise in this area.

Id. at 409.  To satisfy the least restrictive means requirement, the government need not "refute every conceivable option" but it must "explore at least some alternatives" and provide an explanation for rejection. Spratt, 482 F.3d at 41 n.11.

### c.  Application

Plaintiffs claim a RLUIPA violation based on defendants' refusal 1) to hire a full-time NOI chaplain, 2) to give plaintiffs daily access to space for NOI worship, 3) to provide separate NOI fasting and feast sessions, 4) to allow plaintiffs to wear certain religious attire and 5) to permit spiritual drilling.  The parties each contend that they are entitled to summary judgment on plaintiffs' RLUIPA claim.

### i.  Full-time NOI chaplain

First, plaintiffs allege that defendants' failure to hire a full-time NOI chaplain burdens their free exercise rights because their religion requires them to participate in daily congregational prayer five times each day, including on days when the part-time NOI chaplain is unavailable.  Second,

Case 1:11-cv-12173-NMG   Document 340   Filed 09/25/15   Page 10 of 32

plaintiffs assert that the burden is substantial because the limited access to a NOI chaplain forces them to forego obligatory prayers and violate their religious tenets. Plaintiffs add that the burden is not alleviated by the availability of the Sunni Muslims' full-time chaplain because that chaplain refuses to recognize the NOI religion, publicly denounces NOI Muslims as illegitimate and excludes NOI Muslims from the services he conducts.

Defendants respond that their decision not to hire a full-time NOI chaplain was based on the compelling government interests presented by budget and resource constraints, the statewide hiring freeze and their lack of administrative authority to create a new full-time position.  They also contend that providing plaintiffs with a part-time NOI chaplain on Wednesdays and one Friday per month is the least restrictive means available to them.  Defendants explain that they lack the resources and authority to hire a second NOI chaplain and that their diligent efforts to recruit a volunteer chaplain have been unsuccessful.

The Court finds that plaintiffs have not established a substantial burden and that defendants have shown that their refusal to hire a full-time NOI chaplain but to make a good faith effort to recruit volunteers is the least restrictive alternative to achieve their compelling interests.  Accordingly,

-10-

the Court will allow defendants' motion for summary judgment and
deny plaintiffs' cross-motion for summary judgment with respect
to the chaplain hiring portion of the RLUIPA claim.

### ii.  Daily access to space for NOI worship

Alternatively, plaintiffs seek access to space for daily
NOI worship and Friday Jumuah services.  Plaintiffs repeat their
earlier arguments to contend that the lack of daily access
substantially burdens their free exercise rights and to
reiterate that they cannot alleviate the burden by attending the
Sunni Muslim services because the Sunni chaplain refuses to help
NOI inmates.  Plaintiffs assert by affidavit that "the most
important thing is to attend a Jum'ah and make prayer" and that
Jumuah services must be led by a religious leader.

Defendants assert that the burden is not substantial
because plaintiffs can worship individually in their cells on
their own without congregating as a group.  The Court finds this
argument persuasive and notes that plaintiffs did not address
this issue in their opposition or cross-motion for summary
judgment.

Defendants also direct the Court's attention to the state
court decision in <u>Jackson</u> v. <u>Comm'r of Corr.</u>, 661 N.E.2d 955
(Mass. App. Ct. 1996).  In that case the court denied the
government summary judgment after comparing the parties'
affidavits and finding multiple, genuine issues of material fact

-11-

as to whether the defendants had denied the plaintiff access to religious services.  The Court is puzzled by defendants' reliance on the Jackson case because it does not support their argument that they are entitled to summary judgment.

Defendants next contend that compelling security interests prohibit plaintiffs from engaging in group worship without chaplain or staff supervision because inmates cannot occupy a position of control or authority over other inmates.  Defendants assert that allowing plaintiffs access to worship space only when the NOI chaplain is available is the least restrictive means.  They explain that they have rejected alternatives to hiring a full-time NOI chaplain but do not explain why plaintiffs cannot have access to space unless an NOI chaplain is present.  Plaintiffs point out that defendants have not considered assigning staff to provide intermittent supervision of plaintiffs' use of worship space during the times when the NOI chaplain is unavailable, despite the fact that there is adequate staff and space to do so and that defendants have allowed other religious groups access to space with such supervision.

In addition, the Court notes the factual similarities between the pending case and a case that plaintiff Hudson and others initiated in 2001 against DOC officials in another session of this court.  See Hudson, 538 F. Supp. 2d at 403-04.

-12-

Plaintiffs in the instant case seek, <u>inter alia</u>, access to Jumuah services while they are housed in general population. Plaintiffs in the earlier <u>Hudson</u> case sought access to Jumuah services while housed in the segregated Special Management Unit ("SMU"). <u>Id.</u> at 403-04.  The earlier <u>Hudson</u> court found, <u>inter alia</u>, that, although the DOC's ban on participation in Jumuah services by inmates confined in the SMU (Ten Block):

> [1] substantially burden[ed] plaintiffs' practice of a core tenet of their faith[; and]
>
> [2] serve[d] the compelling State interest of rehabilitating prisoners and promoting good order[;]
>
> [such a] ban on participation . . . by closed-circuit television [was] not the least restrictive means of vindicating the compelling State interest at issue.

<u>Id.</u> at 412.  Thereafter, the earlier <u>Hudson</u> court entered an injunction providing that:

> Whenever Plaintiffs are housed in the Special Management Unit, Defendant shall provide access to a closed circuit television set that displays, through sound and images, a live broadcast of such communal Jum'ah services as are regularly held on each and every Friday for the duration of their incarceration (absent a legitimate emergency or the unavailability of an authorized Imam, in which case Defendant may broadcast prerecorded Jum'ah services).

<u>Hudson</u> v. <u>Dennehy</u>, No. CIV.A.01-12145-RGS, 2008 WL 1451984, at *2 (D. Mass. Apr. 11, 2008), <u>aff'd sub nom.</u> <u>Crawford</u> v. <u>Clarke</u>, 578 F.3d 39 (1st Cir. 2009).  The court also directed DOC officials within 90 days to certify compliance by the DOC to the court and to describe the remedial actions taken. <u>Id.</u>

This Court questions why defendants in the instant case did not address the less restrictive alternative of providing plaintiffs with televised recordings of Jumuah services on the days that an NOI chaplain is unable to conduct live Jumuah services at MCI-Concord.  On those days, defendants could arrange for space and intermittent staff supervision such that plaintiffs can either: 1) watch a live broadcast of Jumuah services led by the full-time Sunni chaplain at MCI-Concord, or, if that is unacceptable for any reason, 2) watch a live broadcast of Jumuah services led by an appropriate chaplain at another DOC facility.  If there is no appropriate chaplain available, then defendants could provide plaintiffs with a pre-recorded broadcast of Jumuah services led by an appropriate chaplain on an earlier date.

Consequently, the Court finds that plaintiffs have established a substantial burden as to Jumuah services but that defendants have not responded by imposing the least restrictive means of furthering a compelling governmental interest in that regard.  The Court will therefore deny defendants' motion for summary judgment and allow plaintiffs' cross-motion for summary judgment as to the Jumuah services portion of the RLUIPA claim but will otherwise allow defendants' motion for summary judgment and deny plaintiffs' cross-motion for summary judgment.

-14-

The Court will direct defendants, on the days that an NOI chaplain cannot conduct Jumuah services at MCI-Concord, to provide plaintiffs access to televised recordings of Jumuah services led by an appropriate chaplain.  If there is a legitimate emergency or if no appropriate chaplain is available, defendants may provide plaintiffs with pre-recorded Jumuah services led by an appropriate chaplain on an earlier date.

### iii.  Separate NOI fasting and feast sessions

Plaintiffs seek NOI-specific fasting and feast sessions separate from those attended by other Muslim inmates. Plaintiffs present no arguments on the issue beyond asserting that the DOC receives funding for religious programs and that the DOC has not explained how those funds were spent.

The Court finds that plaintiffs have not shown a substantial burden and thus declines to reach the parties' arguments on compelling interests and least restrictive means. Accordingly, the Court will allow defendants' motion for summary judgment and deny plaintiffs' cross-motion for summary judgment on the fasting and feast portion of the RLUIPA claim.

### iv.  NOI religious attire

Plaintiffs seek to wear NOI religious attire such as "state blue jeans and shirt including bowties clip and Lapel pin." Plaintiffs argue summarily that 1) the requested attire raises no security concerns beyond those presented by the attire that

defendants permit other religious groups to have, 2) state prisons in New York permit NOI bow tie clips, 3) the DOC need not expend any funds in connection with plaintiffs' attire request and 4) to minimize security concerns, defendants could store the clips and pins in an area accessible to inmates only during religious sessions, or alternatively, defendants could allow plaintiffs to wear bow ties made with Velcro.

The Court finds that plaintiffs have not established a substantial burden and thus declines to address the parties' arguments on compelling interests and least restrictive means. Accordingly, the Court will allow defendants' motion for summary judgment and deny plaintiffs' cross-motion for summary judgment with respect to the attire portion of the RLUIPA claim.

### v.   Spiritual drilling

Plaintiffs seek to engage in spiritual drilling because, they say, 1) the drilling serves Allah, 2) there are no security concerns because drilling is not paramilitary training and does not include combat movements and 3) if there are security concerns, defendants can minimize them by requiring that inmates be directly supervised by a chaplain or staff during drills.

Plaintiffs have not, however, demonstrated a substantial burden with respect to drilling and the Court thus declines to consider the parties' arguments on compelling interests and least restrictive means.  Accordingly, the Court will allow

defendants' motion for summary judgment and deny plaintiffs' cross-motion for summary judgment on the drilling portion of the RLUIPA claim.

In summary, the Court will deny defendants' motion for summary judgment and allow plaintiffs' cross-motion for summary judgment to the extent that plaintiffs seek regular access to Friday Jumuah services, but will otherwise allow defendants' motion for summary judgment and deny plaintiffs' cross-motion for summary judgment on the remaining portions of the RLUIPA claim. The Court directs defendants to provide plaintiffs with televised broadcasts or recordings of Jumuah services led by an appropriate chaplain whenever the NOI chaplain cannot provide Jumuah services in person at MCI-Concord.

### 2. 42 U.S.C. § 1983

Section 1983 provides a cause of action against persons who violate federal law while acting under color of state law. 42 U.S.C. § 1983. The Court will address the immunity issues before reaching the merits of the § 1983 claims. See Hunter v. Bryant, 502 U.S. 224, 227 (1991) (noting that "[t]he entitlement is an immunity from suit rather than a mere defense to liability," and so courts "repeatedly have stressed the importance of resolving immunity questions at the earliest possible stage in litigation") (emphasis omitted).

### a.  Official immunity

State officials acting in their official capacities cannot be sued under § 1983 for damages because they are not "persons" under the statute. <u>Will</u>, 491 U.S. at 71.  A suit filed against a state official in his official capacity is considered a suit against the state itself, unless 1) the plaintiff seeks injunctive relief, 2) the state waives its immunity or 3) Congress abrogates the immunity by exercising its Fourteenth Amendment, § 5 power. <u>Id.</u> at 66, 71, 71 n.10.

Defendants contend that immunity bars the § 1983 claims against them in their official capacities for monetary damages. The Court agrees because there is no indication of the Commonwealth's consent to suit and the Fourteenth Amendment, § 5 exception does not apply.  Accordingly, with respect to the official immunity ground, the Court will allow defendants' motion for summary judgment on the § 1983 claims against defendants in their official capacities.

The remaining questions, discussed below, are whether qualified immunity precludes recovery of damages against defendants personally and whether summary judgment is warranted to the extent that plaintiffs seek injunctive relief.

### b.  Qualified immunity

Qualified immunity protects state officials against § 1983 suits for damages if their conduct did "not violate clearly

-18-

established statutory or constitutional rights of which a
reasonable person would have known." Rocket Learning, Inc. v.
Rivera-Sanchez, 715 F.3d 1, 8 (1st Cir. 2013) (citing Harlow v.
Fitzgerald, 457 U.S. 800, 818 (1982)).  Prison officials hold
positions that are generally eligible for qualified immunity.
Brown v. Ponte, 842 F.2d 16, 18 (1st Cir. 1988).

To determine whether qualified immunity applies, the court
must decide 1) whether the official violated the plaintiff's
constitutional right and 2) whether that right was clearly
established at the time of the violation. Pearson v. Callahan,
555 U.S. 223, 232 (2009).  The court must assess the "clearly
established" inquiry "in light of the specific context of the
case, not as a broad general proposition." Maldonado v.
Fontanes, 568 F.3d 263, 269 (1st Cir. 2009).

The Court finds that defendants are entitled to qualified
immunity because plaintiffs have not established a
constitutional violation.  With respect to the First Amendment
claims, discussed below, plaintiffs have not met their burden in
showing that defendants' conduct was not reasonably related to
legitimate penological interests.  With respect to the equal
protection claim, also discussed below, the Court finds that
plaintiffs have not established that they faced differential
treatment based on their religion while defendants have shown
that the differential treatment was instead due to financial and

-19-

security concerns.  As a result, qualified immunity applies because 1) there is no constitutional violation and 2) without a violation, the Court cannot evaluate whether plaintiffs' rights were clearly established at the time of the violation.

Accordingly, with respect to the qualified immunity defense, the Court will allow defendants' motion for summary judgment as to plaintiffs' § 1983 claims against defendants in their personal capacities.

c.   **Substantive claims**

i.   **The First Amendment**

The First Amendment protects the free exercise of religion. U.S. CONST. amend. I.  A prison regulation can restrict an inmate's First Amendment rights only if it is "reasonably related to legitimate penological interests." Turner v. Safley, 482 U.S. 78, 89 (1987).  The relevant factors are

1)   whether there is a valid, rational connection between the regulation and the legitimate government interest put forward to justify it;
2)   whether alternative means to exercise the right exist;
3)   the impact that accommodating the right will have on prison resources; and
4)   the absence of alternatives to the prison regulation.

Kuperman v. Wrenn, 645 F.3d 69, 74 (1st Cir. 2011) (citing Turner, 482 U.S. at 89-90).  In evaluating the factors, a court must give

>   substantial deference to the professional judgment of
>   prison administrators, who bear a significant
>   responsibility for defining the legitimate goals of a
>   corrections system and for determining the most
>   appropriate means to accomplish them.

Overton v. Bazzetta, 539 U.S. 126, 132 (2003).  The

plaintiff bears the burden of persuasion in contesting the

regulation's unreasonableness.  Kuperman, 645 F.3d at 74.

Here, plaintiffs' First Amendment claims allegedly

arise from defendants' failure 1) to hire a full-time NOI

chaplain and 2) to allow plaintiffs daily access to worship

space.  The arguments of both parties with respect to the

First Amendment issue are, in essence, the same as those

made in the context of the RLUIPA claim, discussed above.

After consideration of such arguments and for reasons

expounded in the RLUIPA analysis, the Court finds that

defendants' actions were reasonably related to legitimate

DOC interests.

With respect to the full-time NOI chaplain, the Court

finds that 1) there is a rational connection between

defendants' refusal to hire a second NOI chaplain and

legitimate financial, resource and administrative

interests; 2) plaintiffs can alternatively exercise their

free exercise rights by engaging in individual daily

worship and regularly attending Jumuah services in person

or accessing televised recordings of such services, in

light of the Court's decision on the RLUIPA claim;
3) forcing defendants to hire a second NOI chaplain would
adversely affect prison resources and 4) no reasonable
alternatives are available.  The balance tips steeply in
defendants' favor.

With respect to daily access to worship space, the
Court finds that 1) there is a rational connection between
defendants' refusal to grant such daily access and their
legitimate security concerns; 2) plaintiffs can
alternatively exercise their free exercise rights by
engaging in individual daily worship and regularly
attending Jumuah services in person or accessing televised
recordings of such services, in light of the Court's
decision on the RLUIPA claim; 3) ordering defendants to
provide plaintiffs with such daily access would adversely
affect prison resources and 4) defendants can provide
plaintiffs access to televised recordings of Jumuah
services led by an appropriate chaplain whenever the NOI
chaplain is unavailable, as noted in the RLUIPA analysis.
The balance tips in defendants' favor.

Accordingly, with respect to the First Amendment
ground of the § 1983 claims, the Court will allow
defendants' motion for summary judgment and deny
plaintiffs' cross-motion for summary judgment.

-22-

ii.  **Equal protection under the Fourteenth Amendment**

The Equal Protection Clause of the Fourteenth Amendment requires that the state government treat similarly situated persons alike. City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985).  Defendants claim that plaintiffs did not "allege even skeletal facts" to show a discriminatory motive or that differential treatment was driven by something other than defendants' efforts to accommodate two different religions.

The Court rejects defendants' argument because it applies the incorrect legal standard.  The First Circuit Court of Appeals has held that:

> In general terms, a plaintiff not relying on "typical" impermissible categories, such as race or religion, must show that he was intentionally treated differently from others similarly situated, that no rational basis exists for that difference in treatment, and that the different treatment was based on a malicious or bad faith intent to injure.

Buchanan v. Maine, 469 F.3d 158, 178 (1st Cir. 2006). Plaintiffs whose equal protection claims arise from considerations such as religion therefore must show that defendants treated them differently from other similarly situated groups based on their religion. See Tapalian v. Tusino, 377 F.3d 1, 5 (1st Cir. 2004) (describing the standard as, "compared to others similarly situated, [plaintiff] was selectively treated . . . based on impermissible considerations

-23-

such as race, religion, intent to inhibit or punish the exercise
of constitutional rights, or malicious or bad faith intent to
injure a person") (emphasis omitted).

Here, plaintiffs claim that NOI Muslim inmates and Sunni
Muslim inmates at MCI-Concord are similarly situated and that
defendants treat plaintiffs differently based on their religion
by permitting them fewer opportunities to practice their faith.
Plaintiffs contend that 1) defendants allow Sunni Muslims a
full-time chaplain but only afford plaintiffs a part-time
chaplain who works Wednesdays and some Fridays, 2) defendants
allow Sunni Muslims daily access to their masjhid chapel but
only let plaintiffs meet in the H-building on the Wednesdays and
Fridays when the NOI chaplain is available and 3) defendants
allow Sunni Muslims to observe Jumuah services every Friday in
the masjhid chapel but effectively permit plaintiffs to observe
Jumuah services only one Friday per month as a result of the NOI
chaplain's limited availability and defendants' refusal to let
NOI inmates access the H-building without staff supervision.
Plaintiffs also allege that they cannot attend prayer sessions
in the masjhid chapel because the Sunni Muslims condition their
entry on plaintiffs renouncing their NOI faith and passing a
Sunni Muslim sincerity test.

The Court concludes that defendants are entitled to summary
judgment because, although plaintiffs sufficiently alleged

differential treatment, plaintiffs have failed to offer any
evidence that such treatment is based on their religion.  As
defendants have asserted in their RLUIPA arguments, their
decision not to hire another NOI chaplain is based on budgetary
and administrative constraints and their decision to prohibit
unsupervised meetings in the H-building is based on security
concerns.  Defendants have submitted affidavits to demonstrate
that their actions are motivated by financial and security
concerns, not religion.  Plaintiffs' broad and factually
unsupported assertions that defendants have treated them
differently because of their NOI Muslim religion does not rebut
that evidence.

Accordingly, with respect to the equal protection ground of
the § 1983 claims, the Court will allow defendants' motion for
summary judgment and deny plaintiffs' cross-motion for summary
judgment.  The Court declines to address defendants' arguments
on the § 1983 claims regarding defendants Spencer and Russo
because the issues are now moot.

### 3.    Prison Litigation Reform Act, 42 U.S.C. § 1997e

Plaintiffs make a claim under § 1997e of the PLRA in their
amended complaint but do not specifically make factual
assertions or legal arguments to support their claim.
Accordingly, the Court will dismiss the § 1997e claim.

In contrast, defendants use the PLRA as an affirmative defense to the federal claims by arguing that § 1997e(e) precludes prisoners from recovering damages in federal civil actions unless the prisoners allege physical injuries.

Because the Court will allow summary judgment for defendants and deny summary judgment for plaintiffs on all of plaintiffs' other federal claims, the Court addresses the applicability of the § 1997e(e) defense only with respect to the Jumuah services portion of the RLUIPA claim.  Section 1997e(e) provides that:

> No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act . . . .

42 U.S.C. § 1997e(e).  The First Circuit Court of Appeals has not directly addressed whether § 1997e(e) bars constitutional claims.  Cryer, 934 F. Supp. 2d at 336.  Other sessions in this District have held that it does not. Id. at 338.

In light of the unsettled state of the law, the Court will deny defendants' motion for summary judgment with respect to their PLRA defense.  Thus, defendants' affirmative defense which relies on § 1997e(e) does not preclude the Court from allowing plaintiffs' motion for summary judgment with respect to the Jumuah services portion of the RLUIPA claim.

-26-

### E. State claims and defenses

####    1.   Massachusetts Constitution and Declaration of Rights

The Massachusetts Constitution offers more protection than the federal Constitution with respect to an individual's right to the free exercise of his religion. Rasheed v. Comm'r of Corr., 845 N.E.2d 296, 302 (Mass. 2006). A plaintiff alleging a violation of the Massachusetts Constitution or its Declaration of Rights must "allege a cause of action under the Massachusetts Civil Rights Act, M.G.L. c. 12 §§ 11H and 11I." Cryer, 934 F. Supp. 2d at 339.

In their amended complaint, plaintiffs allege violations of the Massachusetts Declaration of Rights "as secured by" 42 U.S.C. § 1983. Although defendants do not raise the issue, the Court notes that plaintiffs do not separately allege a cause of action under the Massachusetts Civil Rights Act. The Court declines to construe the amended complaint as raising such a state claim. See Cryer, 934 F. Supp. 2d at 339 n.13 (refusing to read a Massachusetts Civil Rights Act claim into the amended complaint where the pro se plaintiff did not allege the claim himself). Accordingly, the Court will allow summary judgment for the defendants and deny plaintiffs' motion for summary judgment on the state constitutional claim.

### 2.    M.G.L. c. 127, § 88

In the amended complaint, plaintiffs assert claims under M.G.L. c. 127, § 88, which protects inmates' rights to the free exercise of religion.  Although the parties do not raise the issue, the Court notes that § 88, by its own terms, does not protect an inmate's right to free exercise where a prison's disciplinary, security or administrative concerns require otherwise. M.G.L. c. 127, § 88 (providing that the statute "shall not be so construed as to impair the discipline of any such institution so far as may be needful for the good government and the safe custody of its inmates . . . .").

The Court finds that ordering defendants to hire a full-time NOI chaplain, to allow daily access to space for worship without supervision, to provide NOI-specific fasting and feast sessions or to permit NOI religious attire or spiritual drilling would impair MCI-Concord's disciplinary, security and administrative interests.  Accordingly, the Court will dismiss the § 88 claims.

### 3.    Agency regulations

The Code of Massachusetts Regulations "establish[es] departmental guidelines regarding religious programs and services in the institutions of the Department of Correction." 103 CMR § 471.01.

Defendants assert that plaintiffs cannot bring any claims under § 471 because there is no clear legislative intent creating a private right of action under that section.   The Court agrees.  Section 471 itself provides that it is

> not intended to confer any procedural or substantive rights or any private cause of action not otherwise granted by state or federal law.

Id.  Accordingly, the Court will allow defendants' motion for summary judgment with respect to the 103 C.M.R. § 471 claim.

### 4.   Unclean hands

Finally, defendants contend that the "unclean hands" doctrine precludes plaintiff Hudson from seeking equitable relief in the pending case because he has already sought access to Jumuah services in an earlier case before another session of this court.  Defendants claim that Hudson has unclean hands because, by deliberately seeking "two different types of equitable relief," he "raises the specter of two federal district court judges contradicting each other."

The Court disagrees.  The "unclean hands" doctrine gives the Court discretion to deny equitable relief to a party that has acted in bad faith or with unclean hands.  See Texaco P.R., Inc. v. Dep't of Consumer Affairs, 60 F.3d 867, 880 (1st Cir. 1995).  The doctrine applies only when the misconduct is

> directly related to the merits of the controversy between the parties, that is, when the tawdry acts in some measure affect the equitable relations between the

-29-

> parties in respect of something brought before the court for adjudication.

Id. (internal quotation marks omitted).  Indeed, "[t]he mere fact that the 'misconduct' arises from some overlapping facts is not enough." Dr. Jose S. Belaval, Inc. v. Perez-Perdomo, 488 F.3d 11, 15 (1st Cir. 2007).

Hudson's conduct in litigating the prior case does not render his hands unclean in the pending case because the doctrine does not apply.  In 2001, Hudson and other inmate-plaintiffs initiated a lawsuit against DOC officials in another session of this court seeking access to Jumuah services while they were housed in the segregated Special Management Unit ("SMU").  Crawford, 578 F.3d at 41 (summarizing the facts of the underlying case).  The district court "entered an injunction requiring closed-circuit broadcasting of Jum'ah" whenever plaintiffs were housed in any SMU at any DOC facility. Id at 42.

In contrast, in 2011, Hudson and other inmate-plaintiffs brought the instant case against DOC officials in this Court seeking access to Jumuah services while housed in general population.  While Hudson's previous efforts seeking access to Jumuah services while housed in the SMU may well have involved comparable facts, his conduct in litigating the earlier case is not "directly related to the merits" of the pending case.

Accordingly, the Court will deny defendants' motion for summary judgment on the grounds of unclean hands.

## ORDER

For the foregoing reasons,

1)   defendants' motion for summary judgment (Docket No. 314) is

   a)   with respect to dismissing the claims raised by plaintiffs Lopez and Mahon as moot, **ALLOWED;**

   b)   to the extent that plaintiffs seek injunctive relief on their RLUIPA claim for regular access to Jumuah services, **DENIED;**

   c)   with respect to their PLRA defense, **DENIED;**

   d)   with respect to their unclean hands defense, **DENIED;** but

   is otherwise **ALLOWED;**

2)   plaintiffs' motion for summary judgment (Docket No. 333) is, to the extent that plaintiffs seek injunctive relief on their RLUIPA claim for regular access to Jumuah services, **ALLOWED,** but is otherwise **DENIED;** and

3)   plaintiffs' claims under 42 U.S.C. § 1997e and M.G.L. c. 127, § 88 are **DISMISSED.**

The Court hereby **DIRECTS** defendants to provide plaintiffs access to televised recordings, with sounds and images, of Jumuah services led by an appropriate chaplain whenever an

NOI chaplain is unavailable to conduct Jumuah services in person.  The recordings are to consist of live broadcasts of Jumuah services led by an appropriate chaplain conducting Jumuah services at MCI-Concord or another DOC facility.  Defendants are to provide access to such televised recordings for the duration of plaintiffs' incarceration.  If there is a legitimate emergency or if an appropriate chaplain is not available to conduct Jumuah services that can be broadcast live to plaintiffs, defendants may provide plaintiffs with pre-recorded Jumuah services led by an appropriate chaplain at an earlier date. Defendants shall bring the DOC into compliance with this directive on or before November 20, 2015.

**So ordered.**

   /s/ Nathaniel M. Gorton
Nathaniel M. Gorton
United States District Judge

Dated September 25, 2015